UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSURU WOLE SHO, | No. 1:21-cv-01812 TLN AC |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CURRENT OR ACTING FIELD OFFICE DIRECTOR, et al., | |
| Defendants. | |

Petitioner, an immigration detainee, brought this habeas corpus action in pro se under 28 U.S.C. § 2241, seeking a bond hearing in relation to ongoing immigration proceedings. ECF No. 1. He is now represented by pro bono counsel. ECF No. 42. The government opposes the habeas petition. ECF No. 39. For the reasons explained below the undersigned recommends that the petition be granted, and that the government be ordered to provide a bond hearing at which the government bears the burden of establishing by clear and convincing evidence that petitioner poses a flight risk or a danger to the community.

I.     <u>Background</u>

Petitioner Monsuru Wole Sho, a native and citizen of Nigeria who had previously been granted asylum in the United States, was convicted in Orange County of kidnaping, criminal threats, and corporal injury on a spouse or cohabitant in May of 2019. He was sentenced to three

years in prison. In November of 2019, petitioner was convicted in San Luis Obispo County of obstructing or resisting an officer. He was sentenced to eight months imprisonment, to run consecutive to the sentence in the Orange County case. On February 3, 2021, petitioner completed serving his criminal sentences, was released from correctional custody, and was transferred to the custody of U.S. Immigration and Customs Enforcement in conjunction with the filing of a motion to reopen removal proceedings. Petitioner has remained in immigration detention, at the Golden State Annex in McFarland, California, since that date.

On February 16, 2021, an Immigration Judge ("IJ") granted the agency's motion to reopen removal proceedings in light of petitioner's criminal convictions. On June 21, 2021, petitioner was found statutorily ineligible for asylum and withholding of removal because his kidnaping conviction constituted a particularly serious crime.[1] The ILJ rejected petitioner's claim under the Convention Against Torture ("CAT") that he would be persecuted on account of his sexual orientation if deported to Nigeria.[2] The IJ ordered petitioner's removal to Nigeria. Petitioner timely appealed to the Board of Immigration Appeals ("BIA"), which adopted and affirmed the IJ's decision on November 30, 2021. Petitioner then sought review in the Ninth Circuit.

Between March 2021 and February 2022, petitioner made three applications to ICE for an immigration bond. See ECF No. 39-1 at 3 (Declaration of Joseph Palakiko). All were denied. Id.[3]

On March 1, 2023, the Ninth Circuit granted petitioner relief. ECF No. 40-1. The Ninth Circuit held that petitioner's due process rights had been violated by the IJ's reliance on a Report of Investigation ("ROI") from the U.S. Embassy Fraud Prevention Program. Petitioner's case for

---

[1] Title 8 U.S.C.§ 1158(b)(2)(A)(ii) & (B)(i) provide that asylum status must be revoked if the Attorney General determines that the alien was convicted of "a particularly serious crime."
[2] The CAT provides for withholding of removal on grounds that the noncitizen faces torture if removed to the proposed country of removal. 8 C.F.R. §§ 208.16(c).
[3] Although petitioner's applications were styled as requests for bond, the Palakiko Declaration explains that petitioner is technically being held as an "arriving alien" under section 235 of the INA, and is therefore eligible for "parole" as opposed to "bond." Id. There has been no showing by the government that the distinction between "bond" and "parole" in the immigration context is relevant to the issues presented by the instant petition. All references herein to "bond" include all forms of release pending removal proceedings, including parole.

withholding of removal was based on the persecution he faces in Nigeria because of his sexual orientation. As evidence demonstrating that he had been targeted for such persecution, petitioner had submitted an extract from a Nigerian police diary detailing his arrest for participating in a homosexual act, and a Nigerian "wanted" poster stating that petitioner had jumped bail for a "homosexual offense." Id. at 2. The IJ rejected this evidence on the basis of an ROI which summarized hearsay reports from unnamed Nigerian law enforcement personnel who cast doubt on the authenticity of petitioner's evidence. The Department of Homeland Security did not identify any of the individuals who provided information regarding the alleged fraud, did not present any supporting evidence to explain the nature of the investigation, did not produce exemplars of authenticated police diary entries and wanted posters to demonstrate inconsistency with petitioner's evidence, and produced no witnesses to testify about the alleged fraud. Accordingly, the Ninth Circuit concluded that petitioner had been denied the opportunity to meaningfully rebut the factual assertions in the ROI and contest the reliability of its conclusions. Id. at 3.

The Court of Appeals found that petitioner had been prejudiced by the error:

> By relying on the ROI, the IJ disregarded independent evidence of Sho's arrest and detention for being homosexual as detailed in a police diary and a wanted poster describing the continuing search for him in Nigeria. These documents are potentially dispositive of Sho's CAT [Convention Against Torture] claim because they independently confirm Sho's homosexuality, past arrest and detention, and likelihood of future torture. In addition, the police documents could have "corroborated [Sho's] testimony had they not been deemed fraudulent." Cinapian v. Holder, 567 F.3d 1067, 1076 (9th Cir. 2009).

Id. at 4.

The Ninth Circuit remanded the case to the BIA "so that it may grant Sho a new hearing." Id. at 4-5. The parties have represented to the undersigned that the case was returned to the Board of Immigration Appeals, where petitioner is seeking return to the lower immigration court for a new hearing. Substantive proceedings on remand have not begun.

The instant habeas petition was filed on November 12, 2021, in the Northern District of California, and was subsequently transferred to this court. ECF Nos. 1, 12. On December 27,

2022, petitioner filed a motion for an emergency injunction in the Northern District, which resulted in the opening of a separate case which was eventually transferred to this district and assigned case number 1:23-cv-00029. That case has since been related to this one. ECF No. 26. At the status conference held in this case on June 7, 2023, ECF No. 46, counsel for both parties agreed that resolution of the instant case would moot the later-filed action, which seeks the same relief. In both cases, petitioner brings an "as applied" due process challenge to his continued detention.

## II. Legal Framework

### A. Jurisdiction

Sho filed his habeas petition pursuant to 28 U.S.C. § 2241, which allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Sho asserts that his continued indefinite detention violates his due process rights under the Fifth Amendment of the United States Constitution. He does not ask this court to defer removal or otherwise decide any substantive immigration matter, he contends only that he is entitled to a constitutionally compliant bond hearing at which he may seek release pending resolution of his CAT claim in the immigration court.[4] Although district courts lack jurisdiction over immigration matters generally, the Ninth Circuit has held that "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211-12 (9th Cir. 2011)). Accordingly, this court has jurisdiction over the petition.

////

---

[4] To the extent that petitioner's pro se filings imply that he also seeks immediate release, the court construes those requests as pleas for an immediate opportunity to seek release in the forum that has jurisdiction. It is clear from pro bono counsel's submissions that petitioner is seeking only an order that the government promptly provide a hearing.

4

B. <u>Entitlement to a Bond Hearing</u>

The Immigration and Nationality Act ("INA") provides a "complex statutory framework of detention authority." <u>Prieto-Romero v. Clark</u>, 534 F.3d 1053, 1057 (9th Cir. 2008). 8 U.S.C. § 1226 governs the detention and release of noncitizens during the pendency of removal proceedings. Under the "default rule" of § 1226(a), the government "may release" or "may continue to detain" an arrested noncitizen "pending a decision" on their removal. 8 U.S.C. § 1226(a); <u>see also</u> <u>Nielsen v. Preap</u>, 139 S. Ct. 954, 958 (2019) ("Aliens who are arrested because they are believed to be deportable may generally apply for release on bond or parole while the question of their removal is being decided."). Section 1226(c), titled "Detention of Criminal Aliens," instructs that the government "shall take into custody any alien" who has committed various types of criminal offenses "when the alien is released" from correctional custody. The parties do not dispute that petitioner Sho was subject to mandatory detention under § 1226(c) upon his release from prison.

The U.S. Supreme Court has held that § 1226(c) is constitutional on its face, <u>Demore v. Kim</u>, 538 U.S. 510, 530 (2003), and that the text of the statute does not allow for the imposition of mandatory periodic bond hearings during detention pending a removal decision, <u>Jennings v. Rodriguez</u>, 138 S. Ct. 830, 847 (2018). However, the Court has specifically left open the possibility of as-applied challenges by detainees. <u>Preap</u>, 139 S.Ct. at 972 ("Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.").

Constitutional claims related to immigration detention are generally subject to judicial review, although discretionary judgments regarding the detention and release of noncitizens in removal proceedings are not. 8 U.S.C. § 1226(e); <u>Singh v. Holder</u>, 638 F.3d 1196, 1202 (9th Cir. 2011). The latter are within the sole authority of the executive branch. <u>Id</u>.[5]

////

---

[5] § 1226(e) provides in part, "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

    C.  Applicable Due Process Principles

All persons within the United States are entitled to due process, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Detention violates due process absent "adequate procedural protections" or "special justification[s]" sufficient to outweigh the "'constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)). Courts apply three factors from Mathews v. Eldridge, 424 U.S. 319 (1976), to determine what the "specific dictates of due process" require in a particular case: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. at 335.

The Mathews factors have been applied in numerous federal habeas cases presenting "as applied" due process challenges to prolonged immigration detention under 8 U.S.C. § 1226(c), in which petitioners sought bond or parole hearings in the immigration court. See, e.g., Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762 (N.D. Cal. 2019); Jimenez v. Wolf, 2020 WL 510347 (N.D. Cal. Jan. 30, 2020); Pham v. Becerra, 2023 WL 2744397 (N.D. Cal. March 31, 2023); Hernandez Gomez v. Becerra, 2023 WL 2802230 (N.D. Cal. April 4, 2023); Diaz v. Becerra, 2023 WL 3237421 (N.D. Cal. May 2, 2023); Jensen v. Garland, 2023 WL 3246522 (C.D. Cal. May 3, 2023); Martinez Leiva v. Becerra, 2023 WL 3688097 (N.D. Cal. May 26, 2023); see also Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502 (C.D. Cal. May 7, 2021).

III.    Analysis

    A.  Individual's Interest

Petitioner has an indisputably significant interest in "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." Zadvydas, 533 U.S. at 690. The interest in "freedom from prolonged detention" is "unquestionably substantial." Singh, 638 F.3d at 1208. That interest is not extinguished by the fact that petitioner is detained pursuant to §

6

1226(c).  Pham, 2023 WL 2744397 at *5-6; Hernandez Gomez, 2023 WL 2802230 at *3; Martinez Leiva, 2023 WL 3688097 at * 7.  Indeed, Sho's interest is heightened in light of the significant length of time he has already been detained (approximately 28 months), and the prospect of further extended detention following the recent remand of his case by the Ninth Circuit to the immigration courts for a new hearing on his claim under the Convention Against Torture.  See Martinez Leiva, 2023 WL 3688097 at * 7 (heightened interest where petitioner detained for 20 months); Lopez Reyes, 362 F. Supp. 3d at 776 (strong private interest where petitioner detained for 22 months); Jimenez, 2020 WL 510347 at *3 (strong liberty interest where petitioner detained for one year).  In sum, the individual interest at state is profound.

### B.  Government's Interest

Although the government undoubtedly has a strong interest in detaining persons who are removable because of serious or violent criminal histories, that interest is not implicated here.  In this case the interest at stake is the government's "ability to detain [petitioner] without providing him with another bond hearing, not whether the government may continue to detain him."  Lopez Reyes, 362 F. Supp. 3d at 777; see also Marroquin Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019).  Requiring the government to provide petitioner with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk.  Accordingly, the government's interest here is low.

### C.  Risk of Erroneous Deprivation

The risk of erroneous deprivation is significant.  Petitioner has presented the immigration court with evidence which, if accepted, would likely entitle him to withholding of removal under the Convention Against Torture.  The Ninth Circuit has found that petitioner's due process rights were violated by the rejection of that evidence on credibility grounds, on the sole basis of an ROI that was itself unsubstantiated.  See ECF No. 40-1.  Although the decision whether to release petitioner from custody pending proceedings on remand is not for this court, it is apparent that the current prolongation of petitioner's detention during the judicial review and remand process is attributable to the IJ's violation of petitioner's due process rights.  Absent a prompt bond hearing

////

1  under the constitutionally required standard, therefore, petitioner risks the erroneous ongoing
2  deprivation of his liberty.

3  In its argument that the Ninth Circuit's grant of relief does not tip the balance in
4  petitioner's favor, the government cites Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991)
5  (holding in connection with noncitizen who was confined for eight years that "[petitioner] has
6  exercised skillfully his rights under the deportation statute, delaying and perhaps preventing the
7  outcome sought by the government. . . .  Although this litigation strategy is perfectly permissible,
8  we hold that [petitioner] may not rely on the extra time resulting therefrom to claim that his
9  prolonged detention violates substantive due process.").  ECF No. 40 at 2.  This out of circuit
10 authority is inapposite.  The instant case does not involve detention prolonged by the detainee's
11 litigation strategy.  In this case, the immigration court violated the detainee's constitutional rights
12 by relying on suspect evidence to reject a facially adequate showing of a likelihood of
13 homophobic persecution in Nigeria.  Petitioner's litigation strategy is not to blame for the IJ's
14 error; his appeal, which has taken substantial time and extended his custody, was the way to
15 correct that error.  It is accordingly appropriate to weigh the delay in his favor.

16 Moreover, the Ninth Circuit has stated that petitioner's evidence of persecution is—unless
17 and until disputed by reliable evidence, which has not heretofore been presented—"potentially
18 dispositive of Sho's CAT claim because [it] independently confirms[s] Sho's homosexuality, past
19 arrest and detention, and likelihood of future torture."  ECF No. 40-1 at 4.  Although the merits of
20 petitioner's CAT claim do not come within the scope of this court's jurisdiction, the Ninth
21 Circuit's recognition of the strength of petitioner's claim also suggests that his ongoing detention
22 constitutes an unjustified deprivation of liberty.

23 For these reasons, the risk of erroneous deprivation is high.  On balance, the Mathews
24 factors weigh heavily in petitioner's favor.  Due process therefore requires a hearing in the
25 immigration court regarding detention or release pending final disposition of petitioner's CAT
26 claim.
27 ////
28 ////

D. Burden of Proof

The Ninth Circuit has held that the government bears the burden of justifying a noncitizen's continued detention by clear and convincing evidence that the detainee poses a danger to the community or a risk of flight. Singh, 638 F.3d at 1204.[6] Where district courts in this circuit have ordered bond hearings on due process grounds for noncitizens in removal proceedings, they have consistently required application of the Singh standard—including in §1226(c) cases. See, e.g., Lopez Reyes, 362 F. Supp. 3d at 775; Pham, 2023 WL 2744397 at *7; Hernandez Gomez, 2023 WL 2802230 at *4; Martinez Leiva, 2023 WL 3688097 at *9; Jensen, 2023 WL 3246522 at *7; Diaz, 2023 WL 3237421 at *8; Jimenez, 2020 WL 510347 at *4. The undersigned agrees with this consensus, which is required by Singh.

In considering Sho's past bids for release, the agency found that he had not satisfied his burden of proof. See ECF No. 39-2 at 19-20 (April 28, 2021 denial of parole on grounds that "[y]ou have not established to ICE's satisfaction you would not pose a danger to the community of U.S. security, if you are paroled from detention."); id. at 23-24 (October 1, 2021 denial of parole on grounds that "[y]ou have failed to provide additional documentation or to demonstrate significant changed circumstances…"); id. at 27-28 (February 23, 2022 denial of parole on grounds that "[y]ou have failed to provide additional documentation or to demonstrate significant changed circumstances…"). These denials were administrative decisions by the ICE Field Office, based on an initial interview and document review. See ECF No. 39-2 at 19-28.

Because petitioner's due process rights are at stake, he is now entitled to a hearing at which the government bears the burden of proof.

CONCLUSION

For the reasons explained above IT IS HEREBY RECOMMENDED that

1. The petition be GRANTED;

---

[6] Although the Supreme Court has rejected the Ninth Circuit's prior ruling, on which Singh rested in part, that certain detention hearings were statutorily required, see Jennings, 138 S. Ct. 847, it has not overruled or "disrupted the constitutional principles underlying the burden of proof decision in Singh." Jensen, 2023 WL 3246522 at *7.

9

2. The government be ordered to provide petitioner with a constitutionally compliant bond hearing, at which the government shall have the burden of proof by clear and convincing evidence, within 14 days of the adoption of this recommendation; and

3. Related case no. 1:23-cv-00029 TLN AC be DISMISSED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within five days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 15, 2023

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE